# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOYCE NOVAK and NICHOLAS DODGE,
CO-EXECUTORS OF THE ESTATE OF
ROSEMARY DODGE,

    Plaintiffs,

        v.

LACKAWANNA COUNTY PRISON,
et al.

    Defendants.

CIVIL ACTION NO. 3:05-CV-0213

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court is Defendants' Motion for Summary Judgment. (Doc. 130.) For the reasons set forth below, the Court will grant Defendants' Motion. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

## BACKGROUND

### A. Procedural Background

On February 1, 2005, Plaintiffs filed their Complaint against the Lackawanna County Prison, the Lackawanna County Prison Board, Lackawanna County, Warden Wydner, Deputy Warden Hilburn, PrimeCare Medical, Inc., Mary Cook, R.N., Patricia Bunting, R.N., CCHP, and Dr. M. Rahman.[1] (Doc. 1.)

---

[1] Mary Cook, Patricia Bunting, Dr. M. Rahman, and PrimeCare Medical, Inc. have each filed and been granted a motion to dismiss. (Docs. 89, 90, 92, and 103.) Remaining Defendants filed a Motion for Leave to Join Third-Party Defendants (Doc. 94-1) on January 4, 2006, seeking to join Mark Cook, Patricia Bunting, Dr. M. Rahman, and PrimeCare Medical, Inc. This Motion was denied on April 12, 2006. (Doc. 105.)

1

On August 2, 2006, a Motion for Summary Judgment was filed by Defendants. (Doc. 130.) This Motion was accompanied by a Statement of Facts, a Brief in Support, and a number of exhibits. (Docs. 131, 132, 133, 136, and 137.)

## B. Factual Background

Plaintiffs' decedent, Rosemary Dodge ("Dodge"), was incarcerated at the Lackawanna County Prison on September 21, 2003 until her death in the early morning hours of October 6, 2003. (Complaint at ¶ 15.)

At the time of her admission to the correctional facility on September 21, 2003, Dodge was evaluated by the medical department of PrimeCare which was the contract health care provider for the Lackawanna County Prison. (Complaint at ¶ 16.) As a result of the PrimeCare evaluation upon her admission, Dodge was placed on a 30 minute behavioral watch and referred to the contract psychiatrist at the Lackawanna County Prison, Dr. Rahman. (Complaint at ¶ 16.)

On September 26, 2003, Dodge was evaluated by PrimeCare's medical department and at that point in time Dr. Rahman discontinued the 30 minute behavioral watch restriction on Dodge. (Complaint at ¶ 17.)

On October 4, 2003, at approximately 2:30 a.m., Dodge was evaluated by PrimeCare's medical department; she was placed on a 15 minute behavioral watch restriction and moved to a camera cell for her safety. (Complaint at ¶ 18.)

The PrimeCare chart reflected behavioral changes in Dodge including: pacing,

---

Defendants presently have before the court a Motion for Reconsideration of Defendants' Motion for Leave to Join Third-Party (Doc. 107) and a Motion for Leave to File Third Party Complaint Against Dr. Rahman (Doc. 110).

screaming, stating that "she is going to get me," stating "the girls are coming through the walls to get me," pressured speech, agitation, hallucinations, eating toilet paper, full body tremors, and banging her head against the wall. (Complaint at ¶ 22.)

Each camera cell at the Lackawanna County Prison has an operating video camera mounted on the ceiling to allow correctional staff to observe the activity of the inmate in the cell. (Complaint at ¶ 23.)

Two Prison guards are assigned to the observation area of the B Housing Unit where the camera cells are located at all times. (Complaint at ¶ 24.)

On October 5, 2003, Lieutenant Verne Dittfield, a Shift Supervisor at the prison, spoke with Mary Cook of PrimeCare and request to send Dodge to the hospital as a result of the documented behavior that Dodge was exhibiting in the camera cell. (Complaint at ¶ 28.)

On October 6, 2003, shortly after midnight, PrimeCare staff attempted to awaken Dodge and check her vital signs. She was unresponsive. (Complaint at ¶ 30.)

On October 6, 2003, at approximately 12:15 a.m., Dodge was pronounced dead. (Complaint at ¶31.)

### C. Plaintiffs' Claims

Plaintiffs have alleged that Defendants: were deliberately indifferent to Dodge's medical needs; were indifferent to the risk that prisoners generally, and Dodge specifically, would attempt to commit suicide; failed to appropriately monitor and watch Dodge; failed to follow standard operating procedures to ensure Dodge received medical attention; and failed to review their procedures after prior inmates had committed suicide. (Complaint at ¶¶ 36-50.) Plaintiffs have not filed a brief or supporting affidavits in opposition to Defendants Motion for Summary Judgment. The United States Court of Appeals for the Third Circuit has

held that the nonmoving party's failure to oppose does not automatically entitle the moving party to summary judgment. *Anchorage Assoc. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir.1990).  However, where the nonmoving party does not submit facts in opposition, "it is entirely appropriate for this court to treat all facts properly supported by the movant to be uncontroverted." *Allebach v. Sherrer,* No. 04-287, 2005 U.S. Dist. LEXIS 15626, at *5 (D.N.J.2005).  Therefore, those facts presented by Defendants Statement of Facts (Doc. 132) and supported by Exhibits A - CC shall be considered undisputed.

### D.  Facts of Record

As of September 21, 2003, the Lackawanna County Correctional Facility, through its contract with PrimeCare, had a number of written policies in place designed to ensure appropriate medical care. (Doc. 132 ¶ 17.)  The Lackawanna County Correctional Facility depended upon PrimeCare to provide health care to inmates; if a correction officer saw that an inmate appeared to be ill it was the correction officer's responsibility to call the medical department. (Doc. 132 ¶ 49.)

Upon Dodge's admission to the correctional facility on September 21, 2003, PrimeCare personnel noted that she suffered from depression.  This resulted in her being placed on 30 minute behavioral watch and being referred to Dr. Rahman.  At the time of her admission, Dodge was administered a Lackawanna County Prison Suicide Prevention Screening Guideline which was completed at the time of Dodge's booking and signed by Nurse Patricia Lynn. (Doc. 132 ¶ 18.)  She was also administered the PrimeCare Receiving Screening/Health Assessment documenting the medications which she was currently taking, the name of the psychiatrist with whom she was treating, a comprehensive history of her

past medical history as well as her recent drug use which lead to her incarceration. This 3-page health assessment form was completed by Patricia Lynn on September 21, 2003 and also provided Dodge with a notification of the medical services available to her, the procedure for how to sign up for sick call and what to do in the event of a medical emergency. (Doc. 132 ¶ 22.)

The Medical Behavioral Incident Report of October 4, 2003, establishes that as a result of the action of the correctional officers and PrimeCare staff, Rosemary Dodge was placed into camera cell P2 and a 15 minute behavioral watch was started for her safety; Nurse Dale Turner also completed a Medical Restrictions Form under date of October 4, 2003, documenting that Dodge was being placed on 15 minute behavioral watch in a camera cell until further notice. (Doc. 132 ¶ 27.)

The Progress Notes which were completed by PrimeCare's nursing staff during Dodge's period of incarceration document that PrimeCare's staff paid close attention to Dodge during her period of incarceration. (Doc. 132 ¶ 28.)

PrimeCare medical staff maintains a medication charting record and documents in strict fashion what medications are being administered to an inmate and whether, in fact, those medications are being taken. Dodge was given her prescribed medication from the date of her admission on September 21, 2003 up to and including October 5, 2003 as prescribed by Dr. Rahman. (Doc. 132 ¶ 44.)

When the behavioral watch was instituted on Dodge on October 4, 2003, she was placed in a camera cell in the Restricted Housing Unit of the correctional facility. The Lackawanna County Monitoring Watch Sheets establish that the corrections officers

responsible for monitoring Dodge in the camera cell completed watch forms in 15 minute intervals and reported unusual behavior to the PrimeCare nursing staff.  (Doc.  132 ¶ 45.)

Warden Wynder reviewed the Lackawanna County Prison Inmate Monitoring Watch Sheets from October 4, 2003 through October 6, 2003 and testified that correctional staff had complied with the 15 minute behavioral watch orders which had been instituted on October 4, 2003.  (Doc.  132 ¶ 52.)

In the afternoon hours of October 5, 2003, correctional officers Rosin Kennedy and Casey Calpin called the medical staff "a bunch of times" to check on Rosemary Dodge's condition.  (Doc.  132, ¶ 73).  On each occasion that the correctional officers contacted PrimeCare, they came to check on Dodge by entering her cell and taking her vital signs.  (Doc.  132 ¶ 74.)

Mary Cook told Dittfield that PrimeCare was aware of Ms. Dodge and her problems.  They stated that the problem was not medical, that it was a mental issue and that Rahman was well aware of it and that Rahman had ordered medication for her.  (Doc.  132 ¶ 91.)

This motion is fully briefed and ripe for disposition.

## LEGAL STANDARD
### a.  Summary Judgment

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### b. Section 1983 Standard

In a civil rights action brought under 42 U.S.C. § 1983, the plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the plaintiff of rights, privileges or immunities secured by the laws or Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Kost v. Kozakiewicz*, 1 F.3d 176, 184 (3d Cir. 1993). Further, § 1983 is not a source of substantive rights. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). Rather, it is a means to redress violations of federal law by state actors. *Id. See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-99 (M.D. Pa. 2005).

It is well established that personal liability under § 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt,* 451 U.S. 527. The United States Court of Appeals for the Third Circuit has also held that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* The Court also stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998), "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual

8

knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." (Citations omitted).

## DISCUSSION

If Plaintiffs are to survive Defendants' Motion for Summary Judgment, there must be some genuine dispute of fact that Defendants (1) acted "under color of law", and (2) their actions were a deprivation of a Constitutional right or a federal statutory right. *See Paratt v. Taylor*, 451 U.S. 527, 535 (1981). With respect to those claims against individuals, Plaintiff must show that Defendants Wynder and Hilborn either subjected Dodge or caused her to be subjected to a violation. *See* 42 U.S.C. § 1983. As it relates to those claims against a governmental entity, Plaintiff must show the presence of a governmental policy or custom that led to the violation. *See Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978).

According to Fed. R. Civ. P. 56(e), "[w]hen a motion for summary judgment is made and supported. . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response. . . must set forth specific facts showing that there is a genuine issue for trial." Plaintiff in this case has failed to provide any specific facts in this case. Therefore, Defendants need only show that the facts they have provided would support a finding in their favor as a matter of law.

The facts provided indicate that Defendants Wynder, Hilborn, the Lackawanna County Prison, and the Lackawanna County Prison Board have written policies in place to ensure appropriate medical care. (Doc. 132 ¶ 17.) There is also ample evidence that these policies were followed. (Doc. 132 ¶¶ 21, 27, 29, 36, 44, 45, 49, 52, and 55.) Additionally, nothing

on the record indicates that any of the policies followed by the Defendants were somehow in breach of Dodge's rights. Furthermore, the facts show that Defendants Wynder and Hilborn had no personal involvement in the care of Dodge, nor did they direct or know of any possible violations of § 1983. (Doc. 132 ¶¶ 47, 48, 50, 51, and 52.) Finally, the undisputed facts indicate that Dodge was properly monitored and cared for by Defendants while in the custody of the Lackawanna County Correctional Facility. (Doc. 132 ¶¶ 18, 19, 20, 21, 22, 28, 29, 36, 39, 45, 63, 69, 73, 74, 86, and 91.) Given the record before the Court, I find that a reasonable jury could not find that the Constitutional rights of Dodge had been violated. Defendants are entitled to judgment as a matter of law, and, therefore, Defendants' Motion for Summary Judgment shall be granted.

## CONCLUSION

For the reasons set forth above, the Court will grant Defendants' Motion for Summary Judgment. (Doc. 130.)[2]

An appropriate Order will follow.

| | |
|---|---|
| September 20, 2006 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

---

[2] Additionally, granting Defendants' Motion for Summary Judgment renders Defendants' Motion for Reconsideration of Defendants' Motion for Leave to Join Third-Party and Motion for Leave to File Third Party Complaint Against Dr. Rahman moot. (Docs. 107 and 110.) Therefore, the Court will deny Defendants' Motion for Reconsideration of Defendants' Motion for Leave to Join Third-Party (Doc. 107) and Motion for Leave to File Third Party Complaint Against Dr. Rahman (Doc. 110) as moot.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOYCE NOVAK and NICHOLAS DODGE, CO-EXECUTORS OF THE ESTATE OF ROSEMARY DODGE,<br><br>    Plaintiffs,<br><br>        v.<br><br>LACKAWANNA COUNTY PRISON, et al.<br><br>    Defendants. | CIVIL ACTION NO. 3:05-CV-0213<br><br>(JUDGE CAPUTO) |

## ORDER

**NOW,** this 20th day of September, 2006, **IT IS HEREBY ORDERED THAT**:

(1)    Defendants' Motion for Summary Judgment (Doc. 130) is **GRANTED**.

(2)    Defendants' Motion for Reconsideration of Defendants' Motion for Leave to Join Third-Party (Doc. 107) is **DENIED as moot**.

(3)    Defendants' Motion for Leave to File Third Party Complaint Against Dr. Rahman (Doc. 110) is **DENIED as moot**.

(4)    The Plaintiffs' case is **DISMISSED**.

(5)    The Clerk of Courts is directed to mark this case **CLOSED**.

                                                   /s/ A. Richard Caputo
                                                 A. Richard Caputo
                                                 United States District Judge